**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**
**CASE NO.: 09-CIV-23447- UNGARO/SIMONTON**

| | |
|---|---|
| BROOKS HORNBECK and all other similarly situated under 29 U.S.C. 216(B), | ) ) ) |
| Plaintiff, | ) |
| vs. | ) ) |
| CLUB MADONNA, INC. AT THE BOULEVARD, INC. ELL-GEE, INC. LEROY C. GRIFFITH | ) ) ) ) ) |
| Defendants. | ) |

**PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT**

COMES NOW Plaintiff, by and through undersigned counsel, and states that Plaintiff is entitled to summary judgment as to the below described issues, pursuant to Southern District Local Rule 7.5 and FRCP 56, and shows the Court that there are no genuine issues of material fact to preclude summary judgment as to such issues as follows:

1. Plaintiff brought this claim for non payment of minimum and overtime wages under the FLSA and Florida Constitution.

2. Plaintiff moves for Summary Judgment on four issues:

   a. That Defendant Leroy Griffith was Plaintiff's joint employer along with the Defendant corporations as defined by the FLSA and would therefore be jointly and severally liable along with the Defendant Corporations for any wages owed to Plaintiff;

   b. Defendants corporations are joint enterprises for the purposes of the FLSA.

   c. This Court has subject matter jurisdiction for three reasons:

1)  Defendants  enterprise is covered pursuant to Title II and VII of the Civil Rights Act as Defendants were in the entertainment business and entertained tourists on a regular and consistent basis thus affecting interstate commerce.

2)  Defendants enterprise is covered under the Fair Labor Standards Act as it had gross sales or business done in excess of $500,000 annually and it had two or more employees handling or selling goods or materials in interstate commerce. Additionally, a substantial amount of the patrons that frequented Defendants Adult entertainment club on a regular and continuous basis came from outside the State of Florida.

3)  In the sister case of Mauricio Tobar v. Club Madonna, Inc. & Leroy Griffith, Defendants admitted in their pretrial stipulation that (1) "This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. §1337 and 29 U.S.C. §216(b)" and (2) "Defendant, CLUB MADONNA, INC., is an enterprise engaged in commerce within the meaning of the FLSA §203(r) & (s).

4)  Defendants' are liable for unpaid wages and liquidated damages as to Plaintiff as a matter of law.

## MEMORANDUM OF LAW

A. **SUMMARY JUDGMENT STANDARD.**

"Rule 56(c) of the Federal Rules of Civil Procedure provides that summary judgment "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247, 106 S. Ct. 2505, 91 L. Ed. 2d 202 (1986).

Once the moving party demonstrates the absence of a genuine issue of material fact, the non-moving party must "come forward with specific facts showing that there is a genuine issue for trial.'" *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 106 S. Ct. 1348, 89 L. Ed. 2d 538 (1986) (quoting Fed. R. Civ. P. 56(e)). Accepting this evidence as truthful, the Court must view the record and all factual inferences there from in the light most favorable to the non-moving party and decide whether "'the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law.'" *Allen v. Tyson Foods, Inc.*, 121 F.3d 642, 646 (11th Cir. 1997) (quoting *Anderson*, 477 U.S. at 251-52)). "Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no genuine issue for trial." *Matsushita*, 475 U.S. at 587 (citing First *Nat'l Bank v. Cities Serv. Co.*, 391 U.S. 253, 288 (U.S. 1968)); *see also Anderson*, 477 U.S. at 247-48 ("the mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of material fact").

### A. Leroy Griffith was Plaintiff's Employer:

The FLSA defines an "employer" to include "any person acting directly or indirectly in the interest of an employer in relation to an employee." 29 U.S.C. §203(d). The term "employer" ought be interpreted more broadly under the Act than common law for remedial purposes. *See, e.g., Herman v. RSR Sec. Servs. Ltd.*, 172 F.3d 132, 139 (2nd Cir. 1999); *Dole v. Elliott Travel & Tours, Inc.,* 942 F.2d 962, 965 (6th Cir. 1991), *citing McLaughlin v. Seafood, Inc.*, 867 F.2d 875, 877 (5th Cir. 1989); *Donovan v. Agnew*, 712 F.2d 1509, 1510 (1st Cir. 1983); *Falk v. Brennan*, 414 U.S. 190, 195 (1973).

Further, multiple employers may be responsible for compliance with the FLSA within one business organization. *See, Elliott Travel & Tours, Inc.,* 942 F.2d at 965; *Agnew,* 712 F.2d at 1510. "[B]oth the employing corporation and the individual responsible for operation thereof may be employers for purposes of the FLSA." *Figueroa v. America's Custom Brokers, Inc.,* 48 F.Supp.2d 1372, 1377 (S.D. Fla. 1999), *citing Patel v. Wargo,* 803 F.2d 632, 638 (11th Cir. 1986). In the Eleventh Circuit, "[t]he overwhelming weight of authority is that a corporate officer with operational control of a corporation's covered enterprise is an employer along with the corporation, jointly and severally liable under the FLSA for unpaid wages." *Patel,* 803 F.2d at 637-38, *quoting Agnew,* 712 F.2d at 1511.

Financial control over a corporation is a significant factor in determining "employer" status. See, *Elliot Travel & Tours,* 942 F.2d 966 (6th Cir. 1991); *Donovan v. Grim Hotel Co.,* 747 F.2d 966, 972 (5th Cir. 1984)(imposing FLSA liability on a "top man" who guided corporate policies and controlled "purse strings"); *Donovan v. Sabine Irrigation Co., Inc.,* 695 F.2d 190, 193-95 (5th Cir. 1983)(liability for controlling finances and dominating the administration); *Dole v. Simpson,* 784 F.Supp. 538, 545-47 (S.D. Ind. 1991).

Personal liability may also arise from significant ownership interest coupled with operational control. *See, Agnew,* 712 F.2d at 1514. Liability may also be found even if control is restricted or exercised only occasionally as such does not diminish the significance of the existence of such control. *Herman,* 172 F.3d at 139, *quoting, Donovan v. Janitorial Servs, Inc.,* 672 F.2d 528, 531 (5th Cir. 1982). See also *Olivas v. A Little Havana Check Cash, Inc.,* 324 Fed. Appx. 839, 846 (11th Cir. Fla. 2009).

In the case at hand, Defendant Leroy Griffith is the Owner and shareholder of Club Madonna and the other corporations which is held in trust. [Griffith Depo. P. 5]. [Garcia Depo. P. 43].

Leroy Griffith is the owner and President of Defendant At the Boulevard, Inc. [Griffith Depo. P. 8]. Leroy Griffith Hired Plaintiff but does recall which year it was in. [Griffith Depo. P. 12-13 and P. 17, P. 46]. Leroy Griffith is at Defendants night club on a daily basis. [Griffith Depo. P. 46]. Leroy Griffith has the authority to hire and fire employees. [Griffith Depo. P. 46]. Leroy Griffith would sign Plaintiff's payroll checks. [Griffith Depo. P. 47]. Other employees and workers at Defendants business would come to Leroy Griffith when they needed questions answered on how the club should run. [Griffith Depo. P. 47]. Joseph Corvea employed as a manager for Defendants would come to Leroy Griffith when he had questions. [Corvea Depo. P. 18]. There is no one other than Leroy Griffith that Joseph Corvea would go to when he had questions. [Corvea Depo. P. 34]. Leroy Griffith had the authority to determine employees rate of pay for all three of Defendants companies. [Griffith Depo. P. 48]. Leroy Griffith considered Plaintiff's work for Club Madonna, At the Boulevard, Inc. and Ell Gee Inc. all the same. [Griffith Depo. P. 14]. Leroy Griffith made the decision how much Plaintiff would be paid per an hour when Plaintiff worked at the Club Madonna. [Griffith Depo. P. 29]. Leroy Griffith hired Francis Ruggiero to work at Club Madonna. [Ruggario Depo. P. 19]. Leroy Griffith interviewed and hired Joseph Corvea who is a manager at Club Madonna. [Corvea Depo. P. 35]. Defendant Leroy Griffith hired his secretary of 30 years, Brenda Garcia to work as a secretary for all three defendant corporations. [Garcia Depo. P. 6]. Leroy Griffith was Plaintiff's supervisor. [Hornbeck Depo. P. 64].

As Leroy Griffith is an owner of Defendants companies, is a signatory on the bank account, controlled Plaintiff hours, had the authority to hire and fire employees, was Plaintiff's supervisor, supervised other managers and employees, hired Plaintiff, determined Plaintiff's rate of pay he should be deemed an employer as defined by the Fair Labor Standards Act, and would therefore

be deemed jointly and severally liable along with the Defendant corporations should a jury return a verdict in favor of Plaintiff.

**B.   Defendants corporations are joint enterprises for the purposes of the FLSA.**

An employee, as defined by 29 U.S.C. § 203(e)(1), is any individual employed by an employer. An employer includes any person acting directly or indirectly in the interest of an employer in relation to the employee. 29 U.S.C. § 203(d).  Section 203(d) specifically permits joint employment relationships to be recognized for purposes of FLSA lawsuits.  Several employers may be liable for an employee's overtime wages under the Fair Labor Standards Act. *See*, *Dole v. Elliot Travel & Tours, Inc.*, 942 F.2d 962 (6th Cir. 1991).

In the case at hand, Both At the Boulevard and Club Madonna are gentlemen clubs and El – Gee owns and maintains the premises of Club Madonna. [Garcia Depo. P. 6-7]. Club Madonna and At the Boulevard are held out to the public as a place for adult entertainment. [Garcia Depo. P. 48]. Defendants corporations are designed to entertain the public. [Garcia Depo. P. 53]. Defendant Leroy Griffith is the Owner and shareholder of Club Madonna and the other corporations which is held in trust. [Griffith Depo. P. 5]. [Garcia Depo. P. 43]. Defendant Leroy Griffith considered Plaintiff working for Club Madonna, At the Boulevard, Inc. and Ell Gee Inc. all the same. [Griffith Depo. P. 14]. Plaintiff worked for both Club Madonna and At the Boulevard, Inc. [Hornbeck Depo. P. 48]. Plaintiff was paid through all the Defendant corporations. [Hornbeck Depo. P. 50]. Sometimes Plaintiff would provide cleaning services for ELL -GEE while at the same time working as a ticket taker for Club Madonna. [Griffith Depo. P. 30], [Corvea Depo. P. 13]. At the Boulevard, Inc. and Club Madonna would share employees on occasion. [Griffith Depo. P. 48]. Brenda Garcia has been employed by Defendant Leroy Griffith on and off for the past 30 years and works as a secretary for all 3 Defendant corporations in the

same exact capacity. [Garcia Depo. P. 5]. Defendants would use the same advertisements to advertise for both Club Madonna and At The Boulevard Inc. on websites, magazines and newspapers. [Garcia Depo. P. 37-38]. [Chiusano Depo. P. 21]. Ell-Gee, Inc. owns and manages the property that Club Madonna is located on. [Griffith Depo. P. 52]. Durham Maharaj works as a maintenance man for defendant at both At the Boulevard Inc. and at Club Madonna. [Griffith Depo. P. 69]. Joe Corvera worked as a manager at both At the Boulevard Inc. and at Club Madonna. [Griffith Depo. P. 69]. Club Madonna and At the Boulevard could share employees on occasions. [Garcia Depo. P. 46-47]. Julius Bruce Chiusano worked for both Club Madonna and At the Boulevard, Inc. as a manager and was paid through the same payroll processing company regardless of which club he was managing. [Chiusano Depo. P. 6-8]. Joseph Corvea while employed as a manager at Club Madonna also worked for several weeks at At The Boulevard, Inc. [Corvea Depo. P. 5]. During that period he was paid through Club Madonna. [Corvea Depo. P. 9]. When At the Boulevard, Inc. first opened, Chiusano while working at the Club Madonna premises would help out and exchange information with manager at At the Boulevard, Inc. Additionally, at times the two clubs would exchange employees and dancers. [Chiusano Depo. P. 23]. Dharim Maharaj is employed through Leroy Griffith, is paid through Ell-Gee, Inc, and performs maintenance service for both Club Madonna and At the Boulevard, Inc. and has done so for the last three years. [Maharaj Depo, P. 5-6]. Defendants would purchase their advertising through the American Express credit card held by Leroy Griffith on behalf of Club Madonna and At the Boulevard, Inc. At the end of the year, the account would allocate the advertising expenses among the three corporations depending on which business earned more. Therefore, if one business earned more than the other, that corporation would receive a higher volume of the

advertising expenses as an expense listed on their tax return. [Reisenberg depo P. 15-16].

Additionally, per the Defendants stipulation:

1. Club Madonna and El Gee, Inc. each employed 2 or more employees who regularly handled significant amounts of non- alcoholic beverages which were manufactured outside of Florida but which were regularly purchased by these Defendants from distributors located within the State of Florida. Additionally, the beverages were purchased using one operating bank account and divided amongst these Defendants according to estimated demand of Defendants' customers at each location.

2. The Defendant denominated as At The Boulevard, Inc. employed 2 or more employees who regularly handled significant amounts of non-alcoholic and alcoholic beverages and other foodstuffs which was/were manufactured outside of Florida but which was regularly purchased by this Defendant from distributors located within the State of Florida. Additionally, these beverages and foodstuffs were purchased using the same operating bank account used to purchase Club Madonna's and El Gee Inc.'s beverages and other foodstuffs and divided amongst these Defendants according to estimated demand of Defendants' customers at each location.

As Defendants corporations share a common business purpose, adult entertainment, have the same ownership, share employees, had Plaintiff working for all three corporations, advertise together, use the same operating bank accounts and have their taxes for expense deduction purposes comingled, all Defendants corporations should be deemed Plaintiff's joint employer for the purposes of the FLSA.

**C. This Court has subject matter jurisdiction for three reasons:**

1. Defendants enterprises are covered under the Title II and VII of the civil Rights Act:

42 U.S.C. §2000a states in part:

> (b) Establishments affecting interstate commerce or supported in their activities by State action as places of public accommodation; lodgings; facilities principally **engaged in selling food for consumption on the premises**; gasoline stations; places of exhibition or **entertainment**; other covered establishments. Each of the following establishments which serves the public is a place of public accommodation within the meaning of this title [42 USCS §§ 2000a-2000a-6] if its operations affect commerce, or if

discrimination or segregation by it is supported by State action: (1) any inn, hotel, motel, or other establishment which provides lodging to transient guests, other than an establishment located within a building which contains not more than five rooms for rent or hire and which is actually occupied by the proprietor of such establishment as his residence;

(2) any restaurant, cafeteria, lunchroom, lunch counter, soda fountain, or other facility principally engaged in selling food for consumption on the premises, including, but not limited to, any such facility located on the premises of any retail establishment; or any gasoline station;

(3) any motion picture house, theater, concert hall, sports arena, stadium or other **place of exhibition or entertainment**; and

(4) any establishment (A)(i) which is physically located within the premises of any establishment otherwise covered by this subsection, or (ii) within the premises of which is physically located any such covered establishment, and (B) which holds itself out as serving patrons of such covered establishment.

[Emphasis added] 42 U.S.C. §2000a.

This circuit, en banc, while acknowledging that the Act was not intended to cover all establishments, has committed itself to the view that § 2000a(b)(3) must be read "with open minds attuned to the clear and strong purpose of the Act, namely, to secure for all citizens the full enjoyment of facilities described in the Act which are open to the general public." *Miller v. Amusement Enterprises, Inc.*, 394 F.2d 342, 349 (5th Cir. 1968). In *Miller* this court concluded that an amusement park was a "place of entertainment," reasoning that the phrase included "both establishments which present shows, performances and exhibitions to a passive audience and those establishments which provide recreational or other activities for the amusement or enjoyment of its patrons." 394 F.2d at 350. The Supreme Court, in *Daniel v. Paul*, 395 U.S. 298, 89 S. Ct. 1697, 23 L. Ed. 2d 318 (1969), endorsed the view of this circuit that the statutory language "place of entertainment" should be read to include recreational areas as well as places of spectator entertainment.

*Rousseve v. Shape Spa for Health & Beauty, Inc.*, 516 F.2d 64, 67 (5th Cir. La. 1975)[1]

---

[1] Fifth Circuit decisions handed down prior to October 1, 1981, are binding precedent upon this Court. *Bonner v. City of Pritchard*, 661 F.2d 1206, 1209 (11th Cir. 1981) (en banc).

Both At the Boulevard and Club Madonna are gentlemen clubs and El – Gee owns and maintains the premises of Club Madonna. [Garcia Depo. P. 6-7]. Club Madonna and At the Boulevard are held out to the public as a place for adult entertainment. [Garcia Depo. P. 48]. Defendants corporations are designed to entertain the public. [Garcia Depo. P. 53]. The dancers at club Madonna are entertainers and are there to entertain the public. [Chiusano Depo. P. 12], [Corvea Depo. P. 8]. Dancers are not stripper but are entertainers [Corvea Depo. P. 21]. At the Boulevard, Inc. has a theater in addition to a night club [Garcia Depo. P. 6], and the theater section would have live entertainers come and perform live adult shows for the audience. [Garcia Depo. P. 12]. Defendants obtained several licenses to run these adult clubs such as through the city of Miami and the City of Miami. At the Boulevard Defendants obtained a license to sell alcohol through the state of Florida. [Garcia Depo. P. 40]. As such, it is beyond contestation that Defendants corporations are involved in public entertainment and therefore covered un Title II and VII of the Civil Rights Act.

Additionally, the Civil Rights Act and the FLSA, both remedial statutes have consistently been interpreted in tandem:

> We regard Title VII, ADEA, ERISA, and FLSA as standing in pari passu and endorse the practice of treating judicial precedents interpreting one such statute as instructive in decisions involving another. See, e.g., *Oscar Mayer & Co. v. Evans*, 441 U.S. 750, 756, 60 L. Ed. 2d 609, 99 S. Ct. 2066 (1979); *Lorillard v. Pons,* 434 U.S. 575, 584, 55 L. Ed. 2d 40, 98 S. Ct. 866 (1978); *Wheeler v. Hurdman*, 825 F.2d 257, 263 (10th Cir. 1987); *Hyland v. New Haven Radiology Assocs.*, 794 F.2d 793, 796 (2d Cir. 1986).

*Serapion v. Martinez*, 119 F.3d 982, 985 (1st Cir. P.R. 1997).

As Defendants establishments are establishments covered under the Civil Rights Act, Defendants establishments should also be covered under the Fair Labor Standards Act.

**2. FLSA Enterprise Coverage (i.e. Subject Matter Jurisdiction) Exists in the Present case:**

Defendants Corporations are an enterprise covered under the act. As acknowledged in *Rodriguez v. Diego's Rest., Inc.*, 619 F. Supp. 2d 1345, 1350 (S.D. Fla. 2009), the issue of coverage under the FLSA has incorrectly been coined as an issue of Subject Matter Jurisdiction.

29 U.S.C. 203(s)(1) defines "enterprise" coverage as an enterprise that has employees "handling, selling, or otherwise working on goods or materials that have been moved in or produced for commerce by any person and is an enterprise whose annual gross volume of sales made or business done is not less than $500,000."

Addressing the gross volume of sales made, or business done element first, the record is clear that Defendants meet the $500,000 threshold of gross volume of sales or business done for the last 3 years as said has been stipulated at the hearing on April 22, 2010 [D.E. 45] as well as during Defendants account's deposition of Richard Riesenberg taken on April 30, 2010 [Riesenberg Depo. P. 7].

As stated in *Galdames v. N & D Inv. Corp.*, 2008 U.S. Dist. LEXIS 73433 (S.D. Fla. 2008):

"It is notable how many courts in the past three-and-a-half decades have concluded that virtually any enterprise that meets the statutory annual gross sales requirement is subject to the FLSA. *See, e.g., Dunlop v. Indust. America Corp.*, 516 F.2d 498, 500-02 (5th Cir. 1975) [6] (referring to the 1961 expansion, and noting "[t]his change extended coverage to businesses with employees engaged in handling or utilizing goods after they had ceased the interstate portion of their movement. This approach reached those nearer the end of the chain of distribution, e. g., retail and service establishments whose businesses were otherwise local in character."); *Archie v. Grand Cent. Partnership, Inc.*, 997 F.Supp. 504, 530 (S.D.N.Y. 1998) ("The bill also adds the

**11** of **21**

word 'or materials' after the word 'goods' to make clear the Congressional intent to include within this additional basis of coverage the handling of goods consumed in the employer's business, as, e.g., the soap used by a laundry. . . . Since 1974, courts facing the issue presented here have unanimously come to the same conclusion: local business activities fall within the reach of the FLSA when an enterprise employs workers who handle goods or materials that have moved or been produced in interstate commerce."); *Dole v. Bishop*, 740 F. Supp. 1221, 1225-26 (S.D.Miss.1990) ("[P]ursuant to a 1974 amendment, . . . in order for an enterprise to be engaged in commerce, it must have employees 'handling, selling, or otherwise working on goods or materials' that have moved in interstate commerce. This amendment adding the words 'or materials' leads to the result that virtually every enterprise in the nation doing the requisite dollar volume of business is covered by the FLSA.") (internal citation and emphasis omitted); *Daniel v. Pizza Zone Italian Grill & Sports Bar, Inc.*, No. 8:07-cv-2359-T-23TGW, 2008 U.S. Dist. LEXIS 23007, 2008 WL 793660, at *1 (M.D.Fla. Mar. 24, 2008**)** ("[E]nterprise coverage embraces virtually every business whose annual gross volume of sales or business is $ 500,000 or more . . . .")"

> "Because enterprise coverage embraces virtually every business whose annual gross volume of sales or business is $500,000 or more, "the most salient element of an 'enterprise' allegation will be the amount of business a defendant does." *Farrell v. Pike, 342 F. Supp. 2d 433, 439 (M.D.N.C. 2004)*. Cited *by Daniel v. Pizza Zone Italian Grill & Sports Bar, Inc.,* 2008 U.S. Dist. LEXIS 23007 (M.D. Fla. 2008).
>
> Under the Old Fifth Circuit case of *Brennan v. Greene's Propane Gas Service, Inc. et al*.,

479 F.2d 1027, 1031 (5th Cir. 1973), *citing Wirtz v. Melos Construction Corp*, 408 F.2d 626, 629 (2nd Cir. 1969): "It is immaterial … that the goods may have 'come to rest' … before they are handled, sold or otherwise worked on by the employees in the enterprise." Thus the "commerce" prong under enterprise coverage is met when the goods are handled by the employees by virtue of the fact that the goods merely "moved across State lines at any time in the course of business,

such as from the manufacturer to the distributor." *Id*.  "There is no requirement of continuity" when the $500,000 monetary threshold is reached.[2]

There is no "continuity" requirement that the goods continue to flow in interstate commerce before reaching the plaintiff-employees who handle such goods in the performance of their duties.  The interstate commerce standard is so liberal in fact, that the goods that moved at some time in interstate commerce need not even be in the same "form"(for example raw materials such as out of state cement refined to ready-mix concrete) when used by a plaintiff-employee during the course of employment.  *See, Id* at 1031, *citing Melos Construction Corp. supra*, and *Schultz v. Kip's Big Boy*, 431 F.2d 530 (5th Cir. 1970).

To further exemplify the expansive applicability of interstate commerce when the $500,000 monetary threshold is satisfied, this Court should find that "[t]he term 'materials' is neither burdened nor restricted with the 'ultimate consumer' exemption found in the 'goods' definition." *Marshall v. Davis, et al.*, 526 F. Supp. 325 (M.D. Tenn. 1981).  The defendant-employer in *Marshall* therefore had to concede that adding the term "or materials" to 29 USC 203(s) eliminated any "ultimate consumer" limitations with the "practical effect of expanding coverage of the Fair Labor Standards Act to every enterprise in the nation [that satisfies the monetary threshold, presently $500,000 in the case *sub judice*]." *Id.* at 329-30.  In favor of the plaintiff-employee, the Court found that the Congressional findings served a "sufficiently rational basis for the enactment of the amendments" that permitted significant broadening of the scope of enterprise coverage by adding "or materials" to 29 U.S.C. Section 203(s).  *Id*. at 331.[3]

---

[2] The current threshold is $500,000, although the threshold was $1,000,000 when the present issue was analyzed by the *Brennan* Court.

[3] The impact of the "or materials" amendment concerned 29.U.S.C. 203(i)'s definition of "goods" that included the "ultimate consumer" language.  See, *Marshall,* 526 F. Supp. at 326.  However, the amendment of subsection 203(s)'s definition of "an enterprise engaged in

In addition, the Court should also consider the following recent decisions from the Southern District of Florida: *Exime v. E.W. Ventures, Inc. et al.*, 591 F. Supp.2d 1364 2008 U.S. Dist. LEXIS 103797 (S.D. Fla. 2008) (decided by this Court), and *Saucedo v. Phoenix Auto Sales, Inc.*, 08-21156-CIV-ALTONAGA/BROWN (S.D. Fla. 1/5/09).   In *Saucedo*, the Court in the Southern District of Florida cited the Southern District decision of *Exime* in addressing the issue of employers that utilized materials that previously moved in interstate commerce in light of end-user considerations.  *Saucedo*, 08-21156 at 7.  In citing *Exime*, the Court in *Saucedo* provides an in-depth analysis of the impact of the "or materials" amendment concerned 29.U.S.C. 203's definition of "goods" that included the "ultimate consumer" language.  *Id*.   The Court noted the relevant Senate Report's reference to "soap used by a laundry" with regard to expansion of jurisdiction. Thus, adding the "materials" language broadened FLSA jurisdiction "by substantially constricting" defense arguments based on the ultimate consumer.  *Saucedo* at 8, citing *Exime*.   Therefore, in *Saucedo*, the court did not require the defendants' used car sales company to actually obtain the cars or sell them directly in interstate commerce.  Rather, in *Saucedo* it was sufficient that the defendant handled "automobiles that moved in interstate commerce, even though they had previously reached an ultimate consumer…." *Saucedo* at 11.

Also, in a recent Order Denying Motion for Summary Judgment in the case of *Diaz v. Jaguar Rest. Group. LLC*, 2009 U.S. Dist. LEXIS 52670 (S.D. Fla. June 22, 2009) (Case # 08-22317-CIV-TORRES (S.D. Fla. 6/22/09)) this Court issued an opinion strongly in favor of a flexible approach to interstate commerce when the $500,000 prong is met.  *See also*

commerce…" that added the "or materials" language (i.e. plaintiff-employees "handling, selling, or otherwise working on **goods or materials** that have been moved in or produced for commerce") caused an apparent schism between 203(i) and 203(s).  In other words, the Court found that there was no need to satisfy the "ultimate consumer" language under the "goods" definition because the plaintiff-employee could simply look to the "or materials" language that did not have an "ultimate consumer" component. The *Marshall* Court found that the seemingly redundant "or materials" amendment "clarified Congressional intent to broaden the scope of enterprise coverage."

**14** of **21**

*Martinez v. Cancun Grill, Inc.*, 08-23362-CIV-GRAHAM (S.D. Fla. 9/3/09).   Consequently, recent case law in this District supports the proposition that, for example, when the $500,000 threshold is met, it is not necessary to show under an enterprise theory that a defendant employer purchased products directly from a supplier located outside the state of Florida with respect to the interstate commerce prong.

In the case at hand, the Parties have stipulated that Defendants businesses had two or more employees who handled significant amount of beverages and food supplies that were manufactured outside the state of Florida. [Exhibit "A"].

1.  Club Madonna and El Gee, Inc. each employed 2 or more employees who regularly handled significant amounts of non- alcoholic beverages which were manufactured outside of Florida but which were regularly purchased by these Defendants from distributors located within the State of Florida. Additionally, the beverages were purchased using one operating bank account and divided amongst these Defendants according to estimated demand of Defendants' customers at each location.

2.  The Defendant denominated as At The Boulevard, Inc. employed 2 or more employees who regularly handled significant amounts of non-alcoholic and alcoholic beverages and other foodstuffs which was/were manufactured outside of Florida but which was regularly purchased by this Defendant from distributors located within the State of Florida. Additionally, these beverages and foodstuffs were purchased using the same operating bank account used to purchase Club Madonna's and El Gee Inc.'s beverages and other foodstuffs and divided amongst these Defendants according to estimated demand of Defendants' customers at each location.

Stipulation that some of the alcohol sold At the Boulevard, Inc. is manufactured outside the state of Florida. [Corvea Depo. P. 37-38]. At Club Madonna, Defendants sell non-alcoholic beverages such as soft drinks, juices, soda, champagne, wine, beer such as Coors Light and Becks. [Griffith Depo. P. 41]. The Coors Beer served at Defendants business comes from Colorado. "Coors is like knowing that apples come from the state of Washington. Coors I know comes from Colorado…" [Ruggario Depo. P. 13-14]. Defendants purchased their beer from Gold Coast, non-alcoholic champagne from Republic National Distributors, alcohol beverages from

Southern Wine and Republic Nation which were used at Defendants basis on a continuous basis. [Garcia Depo. P. 20-22]. Defendants advertises in newspapers, TV, taxi cabs and magazines. [Griffith Depo. P. 42]. [Garcia Depo. P. 34-36]. The dancers at Defendants night club come from all over the world. [Griffith Depo. P. 44]. Based on their accents it appears that the dancers came from all over the world. [Corvea Depo. P. 32]. People come to the club from all over the world. [Griffith Depo. P. 44]. People come to the club from all over the world such as from Australia, Germany, South Africa and Britain. [Ruggario Depo. P. 15].  Tourists frequented club Madonna especially with big events like the Super Bowl, Pro Bowl and baseball world series [Garcia Depo. P. 25]. [Chiusano Depo. P. 10-11], [Corvea Depo. P. 31]. Club Madonna is located next to several hotels on Miami Beach. Approximately fifty percent of the customers at Club Madonna were tourists [Chiusano Depo. P. 10-11]. Defendants business has an ATM used by its customers to obtain cash. [Griffith Depo. P. 45]. The ATM machines used at Club Madonna and At The Boulevard, Inc.  have been on Defendants premises for the last 3 years and have been used continuously over the past 3 years. [Garcia Depo. P. 31]. Defendants business would receive a service charge for usage of the ATM machine on a monthly basis from a company called Platinum Processing located in Texas. [Garcia Depo. P. 26-27]. The ATM machine was used on a daily basis. [Corvea Depo. P. 26]. The adult entertainers that would come to At the Boulevard to perform adult features, probably came from outside the State of Florida. [Garcia Depo. P. 11-12]. Defendants secretary would receive and make phone calls to and from sources outside the state of Florida about once a week. [Garcia Depo. P. 41]. Additionally, the beverages purchased by Defendants such as from Republic National Distributing Company were bottled and imported from all over the world and sold to Defendants; Remy Martin – bottled in and imported from France; Alize-Bottled in and imported from France; Kettle One- Bottled in and imported from

Holland; Ariel – Bottled in and purchased from California; Ing St. Regis – Bottled in and purchased from New York. [Exhibit "B"]. Defendants purchased from Premier Beverage Company LLC Bacardi Rum, Dewar's Scotch, Southern Comfort, Grey Goose, Jack Daniels, Drambuie, Bombay Gin among other alcoholic and non-alcoholic drinks on a regular and continuous basis. [Exhibit "C"].

Pursuant to 29 U.S.C. 203(s)(1) Plaintiff must prove that Defendant (1) has employees engaged in commerce or in the production of goods for commerce, or (2) that Defendant has employees handling, selling, or otherwise working on goods or materials that have been moved in or produced for commerce by any person.  In the case at hand Defendants have employees engaged in commerce as the entertainers (i.e. strippers, dancers) are from outside the state of Florida, approximately fifty percent (50%) if the patrons are tourists from outside the state of Florida  as such Defendants are involved in the manufacturing and selling of entertainment for commerce. As another District Court stated:

> The Court notes  that the Hornets select the players and coaches to form the team; the players and coaches subsequently perform the work required to compete in the National Basketball Association. Thus, the Hornets operate both at the fount and delta of the stream of distribution for professional basketball. Stated another way, the Court finds that the Hornets **both manufacture and sell entertainment** (professional basketball) to the public.
>
> Accordingly,  the Court is not convinced that the Hornets operate within the retail or service establishment "concept" considered by the FLSA because the Hornets have the dual characteristics of a manufacturer and a retailer. [Emphasis added]

*Liger v. New Orleans Hornets NBA Ltd. P'ship.*, 565 F. Supp. 2d 680, 688-689 (E.D. La. 2008).

Additionally, Defendants have two or more employees that on a consistent basis handled, sold or otherwise worked on goods or materials that have been moved in or produced for commerce by any person, as the clubs were frequented by a substantial amount of tourists from

all over the world, the dancers were from all over the world, the drinks and food items handled by Defendants employees on a regular and consistent basis originated from outside the state of Florida, the ATM was used by tourists on a daily basis and said payments were made to Defendants business through a company in Texas all show that Defendants business  was an enterprise engaged in commerce and therefore covered under the FLSA.

3. **Defendant Previously Stipulated to Enterprise coverage and are therefore estopped from challenging jurisdiction:**

In the sister case of Mauricio Tobar v. Club Madonna, Inc. & Leroy Griffith, Defendants admitted in section #7 paragraph (a) and (e) of their pretrial stipulation that (1) "This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. §1337 and 29 U.S.C. §216(b)" and (2) "Defendant, CLUB MADONNA, INC., is an enterprise engaged in commerce within the meaning of the FLSA §203(r) & (s). [Exhibit "D"].  As such, Defendants should be precluding from challenging FLSA coverage as their stipulation amounts to an admission by a party opponent pursuant to Rule 801 (2)(A)(B)(C) and (D) which states:

> (2) Admission by party-opponent. The statement is offered against a party and is (A) the party's own statement in either an individual or a representative capacity or (B) a statement of which the party has manifested an adoption or belief in its truth, or (C) a statement by a person authorized by the party to make a statement concerning the subject, or (D) a statement by the party's agent or servant concerning a matter within the scope of the agency or employment, made during the existence of the relationship…

Fed Rules Evid R 801. Defense counsel as the representative for Leroy Griffith and Club Madonna stipulated that Defendant Club Madonna is an enterprise engaged in commerce within the meaning of the FLSA §203(r) & (s) for the years 2006 and 2007 and should therefore be precluded from challenging FLSA coverage.

D.  **Defendants' are liable for unpaid wages and liquidated damages as to Plaintiff as a matter of law:**

It is the employer's responsibility of keeping records of hours worked by employees under the FLSA.  "Where the employer's records of work time are inaccurate [or completely missing] and the employee cannot offer convincing substitutes . . . [] the employee has carried out [his/her] burden if he/she proves that he/she has in fact performed work for which he/she has been improperly compensated and if he/she produces sufficient evidence to show the amount and extent of that work as a matter of just and reasonable inference.  The burden then shifts to the employer to come forward with evidence of the precise amount of work performed or with evidence to negate the reasonableness of the inference to be drawn from the employee's evidence.  If the employer fails to produce such evidence, the [employee] may then [be] awarded damages even though the result be only approximate. [emphasis added]." *Anderson v. Mt. Clemens Pottery Co.,* 328 U.S. 680, 687 (1946).

The dramatic affect of an employer's failure to maintain adequate records as required with respect to calculation of FLSA damages can be seen in *Reeves v. International Telephone and Telegraph Corporation*, 616 F.2d 1342, 1351 (5th Cir. 1980), *citing, among other cases, Anderson v. Mt. Clemens Pottery Co.,* 328 U.S. 687 (1946).  Even if the estimations by Plaintiff have been at some point inaccurate, "Inaccurate wage and hour information, however, is not always fatal to a claim for minimum wage or overtime compensation under the Act.  Where the inaccuracy is due to the employer's failure to keep adequate records as required by statute, imprecise evidence on quantum can provide a "sufficient basis" for damages.  Defendants have not completely maintained the required records.

Defendants have not rebutted Plaintiff's response to interrogatories or his deposition testimony by testimony of their own or through payroll records establishing the hours that Plaintiff worked each week. In fact, the depositions contain conflicting testimony as to whether any records were in fact kept for the hours that Plaintiff worked either as cleaner or as a ticket taker. As such, Defendant has failed to rebut Plaintiff's contention that he worked overtime and was not appropriately compensated for said overtime hours works.

Additionally, see, *Joiner v. Macon*, 814 F.2d 1537, 1539 (11th Cir. 1987) (employer who knew or who had reason to know that the FLSA applied cannot establish good faith as a defense); *Reeves v. International Tel. & Tel. Corp.*, 616 F.2d 1342 (5th Cir. 1980) (Absent

affirmative showing on Employer's part to verify compliance with the F.L.S.A., double damages are mandatory under the F.L.S.A.). Also see *James Leach Jr. v. Johnston et.al.*, 812 F.Supp 1198 ( M.D. Fla. 1992) (good faith entails a duty to affirmatively investigate.)  See also, *Barcellona et.al. v. Tiffany English Pub, Inc.*, 597 F.2d 464 (5th Circuit 1979); *Lynn Martin v. Selker Brothers, Inc.* et. al. , 949 F.2d 1286 (3rd Cir. 1991).   Double damages are the "norm" and the Defendant's burden to escape the imposition of "double damages" is a heavy one.  See *Martin v. Cooper Electric Supply Co.*, 940 F.2d 896 (3rd Cir. 1991). The employer's burden of proof is a difficult one to meet to avoid the imposition of double damages. *Brock v. Wilamowsky* (2nd Cir., 1987) *See also*, *Walton v. United Consumers Club, Inc.*, 786 F.2d 303 (7th Cir. 1986); *Shea v. Galaxie Lumber & Construction Company, Ltd.*, 152 F.3d 729 (7th Cir. 1998).  *See, Silas v. Hillsborough County*, 2006 U.S. Dist. LEXIS 79503, *18 (M.D. Fla. 2006)(liability for liquidated damages is properly determined at the summary judgment stage).

In the present case, Defendants knew that Plaintiff worked overtime between both companies, Defendants were previously sued for overtime by a former employee and Defendants did not take any affirmative steps in determining whether their payroll practices were in conformance with the law until after the present lawsuit was filed. [Griffith depo. P. 76.]


WHEREFORE, Plaintiff requests that this Court enter Summary Judgment in Favor of Plaintiff as to all issues raised in Plaintiff's Motion for Summary Judgment as no issues of material fact exist precluding the entry of summary judgment in favor of Plaintiff.


Respectfully submitted,
Daniel T. Feld, Esq.
J.H. Zidell, P.A.
Attorney For Plaintiff
300 71st Street, Suite 605
Miami Beach, Florida 33141
Tel: (305) 865-6766
Fax: (305) 865-7167

By:__/s/ Daniel T. Feld, Esq. ____
    Daniel T. Feld, Esq.
    Florida Bar No.: 0037013

**20** of **21**

**<u>CERTIFICATE OF SERVICE:</u>**

I hereby certify that a true and correct copy of the foregoing Plaintiff's Motion for summary judgment was sent via to CM/ECF to Sanford R. Topkin, Esq., Topkin & Egner PL, 1166 W Newport Center Drive, Suite 309, Deerfield Beach, FL 33442, Fax: 954-422-5455, email: Stopkin@topkinegnerlaw.com on this 28th day of May, 2010.

Daniel T. Feld, Esq.
J.H. Zidell, P.A.
Attorney For Plaintiff
300 71st Street, Suite 605
Miami Beach, Florida 33141
Tel: (305) 865-6766
Fax: (305) 865-7167

By:__/s/ Daniel T. Feld, Esq. _____
    Daniel T. Feld, Esq.
    Florida Bar No.: 0037013